TUCKER ELLIS LLP
David J. Steele SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:        213.430.3400
Facsimile:        213.430.3409

Attorneys for Plaintiff,
FACEBOOK, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC., | Case No. 3:19-cv-01277-JSC |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT** |
| v. | DATE:        August 13, 2020 |
| GLEB SLUCHEVSKY and ANDREY GORBACHOV, | TIME:        9:00 a.m.<br>CTRM:        E – 15th Floor |
| Defendants. | Hon. Jacqueline Scott Corley |

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

# TABLE OF CONTENTS

NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT ..................................... 1

I.     INTRODUCTION ............................................................................ 2

II.    STATEMENT OF FACTS ................................................................. 2

     **A.**     Background Concerning Facebook.................................................. 2

     **B.**     Defendants and Their Illegal Scheme ........................................... 3

     **C.**     The Filing of This Action and Subsequent Entry of Default ......................... 4

III.   THIS COURT HAS BROAD DISCRETION TO GRANT DEFAULT JUDGMENT ........................................................................... 5

IV.   DEFAULT JUDGMENT IS WARRANTED....................................... 6

     **A.**     This Court Has Jurisdiction to Enter Default Judgment ................................. 6

         1.     The Court has subject matter jurisdiction over the claims................... 6

         2.     Defendants consented to personal jurisdiction under the Facebook Terms. ............................................................................. 6

         3.     The Court has specific personal jurisdiction over Defendants. .......... 7

         4.     Service has long been deemed complete under the Hague Convention.......................................................................... 11

     **B.**     The *Eitel* Factors Weigh Heavily in Favor of Granting Default Judgment ... 12

         1.     Facebook will be prejudiced absent entry of default judgment. ........ 12

         2.     Facebook's claims are meritorious and well founded. ...................... 12

         3.     The amount of money at stake supports a default judgment. ............ 17

         4.     There exists no potential dispute of material facts. .......................... 18

         5.     There is no evidence of excusable neglect in the record. .................. 18

         6.     There is no likelihood of a decision on the merits under these circumstances.......................................................................... 18

     **C.**     Facebook is Entitled to a Permanent Injunction ........................................... 19

     **D.**     Facebook is Entitled to Attorneys' Fees and Costs ....................................... 20

V.    CONCLUSION.................................................................................. 21

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

# TABLE OF AUTHORITIES

**Cases**

*Aldabe v. Aldabe,*
   616 F.2d 1089 (9th Cir. 1980) ................................................................................................. 7

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,*
   223 F.3d 1082 (9th Cir. 2000) ............................................................................................... 11

*Bd. of Trs. v. Superhall Mech., Inc.,*
   2011 WL 2600898, (N.D. Cal. June 30, 2011) ..................................................................... 23

*Brayton Purcell LLP v. Recordon & Recordon,*
   575 F.3d 981 (9th Cir. 2009) ........................................................................................... 10, 12

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985) ....................................................................................................... 11, 14

*Calder v. Jones,*
   465 U.S. 783 (1984) ............................................................................................................... 12

*CGI Techs. & Sols. Inc. v. Acacio,*
   2019 WL 7882368, (C.D. Cal. Mar. 26, 2019) ..................................................................... 15

*China Int'l Marine Containers (Grp.) Ltd. v. Jiangxi Oxygen Plant Co.,*
   2017 WL 6403886, (S.D. Tex. Feb. 15, 2017) ...................................................................... 15

*CollegeSource, Inc. v. AdademyOne, Inc.,*
   653 F.3d 1066 (9th Cir. 2011) ................................................................................... 11, 13, 14

*Costal Steel Corp. v. Tilghman Wheelabrator* Ltd.,
   709 F.2d 190 (3d Cir 1983) ..................................................................................................... 8

*Craigslist, Inc. v. Doe 1,*
   2011 WL 1897423, (N.D. Cal. Apr. 25, 2011) ..................................................................... 26

*Craigslist, Inc. v. Naturemarket, Inc.,*
   694 F.Supp.2d 1039 (N.D. Cal. 2010) ....................................................................... 13, 16, 17

*Craigslist, Inc. v. RealWorks Group LLC,*
   2009 WL 10692489, (N.D. Cal. Oct. 29, 2009) ..................................................................... 25

Tucker Ellis LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

ii

*Dole Food Co. v. Watts,*
   303 F.3d 1104 (9th Cir. 2002) ................................................................. 13

*Dolin v. Facebook, Inc.,*
   289 F. Supp. 3d 1153 (D. Haw. Feb. 6, 2018) .......................................... 9

*Eitel v. McCool,*
   782 F.2d 1470, 1471 (9th Cir. 1986) ................................................. passim

*Facebook Inc. v. Power Ventures,*
   844 F.3d 1058 (9th Cir. 2016) .......................................................... 14, 20

*Facebook, Inc. v. Rankwave Co.,*
   2019 U.S. Dist. LEXIS 231300 (N.D. Cal.  Nov. 13, 2019) ..................... 9, 12

*Fair Hous. of Marin v. Combs,*
   285 F.3d 899 (9th Cir. 2002) ................................................................. 17

*Fotaleza v. PNC Fin. Servs/ Group, Inc.,*
   642 F. Supp. 2d 1012 (N.D. Cal. 2009) ................................................... 22

*Franklin v. Facebook, Inc.,*
   2015 WL 7755670, (N.D. Ga. Nov. 24, 2015) ......................................... 9

*Fteja v. Facebook, Inc.,*
   841 F. Supp. 2d 829 (S.D. NY 2012) ...................................................... 9

*Geddes v. United Fin. Grp.,*
   559 F.2d 557, 560 (9th Cir. 1977) ..................................................... 1, 23

*Giotta v. Ocwen Fin. Corp.,*
   2015 U.S. Dist. LEXIS 167108, *9 (N.D. Cal. Dec. 11, 2015) ................. 11

*Google, Inc. v. Eolas Techs. Inc.,*
   2014 WL 2916621, (N.D. Cal. June 24, 2014) ...................................... 12

*Hayes v. Facebook, Inc. et al.,*
   Case No. 18-cv-02333-MEH, Doc. 54 at 4 (D. Col. Mar. 6, 2019) ........... 9

*HiQ Labs, Inc. v. LinkedIn Corp.,*
   938 F.3d 985 (9th Cir. 2019), .............................................................. 14

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

iii

*In re Tuli*,

    172 F.3d 707 (9th Cir. 1999) ............................................................................................... 10

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,

    715 F.3d 716 (9th Cir. 2013) ............................................................................................... 10

*Int'l Shoe Co. v. Washington*,

    326 U.S. 310 (1945) ............................................................................................................. 10

*Lake v. Lake*,

    817 F.2d 1416 (9th Cir. 1987) ............................................................................................. 11

*Learjet Inc. v. Oneok, Inc.*,

    715 F.3d 716 (9th Cir. 2013) ............................................................................................... 14

*Leger v. Rivers Edge Treestands, Inc.*,

    2016 WL 909173, (E.D. Tex. Feb. 8, 2016) ....................................................................... 16

*Maneti-Farrow, Inc. v. Gucci America, Inc.*,

    858 F.2d 509 (9th Cir. 1988) ................................................................................................. 8

*Meemic Ins. Co. v. Vertical Partners W., LLC*,

    2019 WL 4928806, (E.D. Mich. Oct. 6, 2019) ................................................................... 15

*Multiven, Inc. v. Cisco Sys., Inc.*,

    725 F. Supp. 2d 887 (N.D. Cal. 2010) ............................................................................... 20

*Nissan Motor Co. v. Nissan Computer Corp.*,

    89 F. Supp. 2d 1154 (C.D. Cal. 2000) ................................................................................ 14

*Panavision Int'l, L.P. v. Toeppen*,

    141 F.3d 1316 (9th Cir.1998) .............................................................................................. 10

*Parziale v. HP, Inc.*,

    2020 WL 1976481, (N.D. Cal. Apr. 24, 2020) ................................................................... 18

*PepsiCo v. Triunfo-Mex, Inc.*,

    189 F.R.D. 431, 432 (C.D. Cal. 1999) ................................................................................. 3

*PepsiCo, Inc. v. Cal. Security Cans*,

    238 F. Supp. 2d 1172 (C.D. Cal. 2002) .............................................................................. 16

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

MOTION FOR DEFAULT JUDGMENT
CASE NO. 3:19-CV-01277-JSC

*Philip Morris USA, Inc. v. Castworld Prods.*, Inc.,

219 F.R.D. 494 (C.D. Cal. 2003) ........................................................................ 17

*Schwarzenegger v. Fred Martin Motor Co.*,

374 F.3d 797 (9th Cir. 2003) ............................................................................... 11

*Senah, Inc. v. AVIC Forstar S&T Co.*,

2019 WL 5068688 (N.D. Cal. July 2, 2019) ........................................................ 15

*Solarbridge Techs., Inc. v. Ozkaynak*,

2012 WL 2150308, (N.D. Cal. June 12, 2012) .................................................... 26

*Stackla, Inc. v. Facebook, Inc.*,

2019 U.S. Dist. LEXIS 167324, *17 (N.D. Cal. Sept. 27, 2019) ........................ 26

*Tech. LED Intellectual Prop., LLC v. Revogi, LLC*,

2019 U.S. Dist. LEXIS 108948, (N.D. Cal. June 27, 2019) .......................... passim

*The Bremen v. Zapata Off-Shore Co.*,

407 U.S. 1, 15 (1972) ...................................................................................... 9, 10

*Theofel v. Farey-Jones*,

359 F.3d 1066 (9th Cir. 2003) ............................................................................. 20

*Thomas v. Facebook, Inc.*,

Case No. 18-cv-00856-LJO-BAM, Doc. 14 at 7, (E.D. Cal. Aug. 15, 2018) .......... 9

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,

486 U.S. 694, 698 (1988) ...................................................................................... 5

*Wecosing, Inc. v. IFG Holdings, Inc.*,

845 F. Supp. 2d 1072 (C.D. Cal. 2012) ............................................................... 24

*World-Wide Volkswagen Corp. v. Woodson*,

444 U.S. 286 (1980) ............................................................................................ 15

*Yelp Inc. v. Catron*,

70 F. Supp. 3d 1082 (N.D. Cal. 2014) ................................................................. 14

*Zynga Game Network, Inc. v. Goh*,

2011 WL 13376996, (N.D. Cal. Feb. 14, 2011) ................................................... 27

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

v

**Statutes**

18 U.S.C. § 1030 ............................................................................................................ 16

18 U.S.C. § 1030(a)(4)(a) ............................................................................................... 14

18 U.S.C. § 1030(a)(5) .................................................................................................... 14

18 U.S.C. § 1030(c)(4)(A)(i)(I) ...................................................................................... 16

18 U.S.C. § 1030(e)(11) .................................................................................................. 16

18 U.S.C. § 1030(e)(8) .................................................................................................... 16

18 U.S.C. § 1030(g) ................................................................................................... 16, 20

28 U.S.C. § 1331 ............................................................................................................... 7

28 U.S.C. § 1332 ............................................................................................................... 7

28 U.S.C. § 1367 ............................................................................................................... 7

Cal. Penal Code § 502 ........................................................................................... 16, 20, 21

Fed. R. Civ. P 4(f)(1) ...................................................................................................... 11

Fed. R. Civ. P 26(f) ........................................................................................................... 5

Fed. R. Civ. P 54(c) ........................................................................................................ 19

Fed. R. Civ. P 55(b) ...................................................................................................... 2, 5

**Treaties**

Convention on the Service Abroad of Judicial and Extrajudicial Documents

in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 ........................ passim

Tucker Ellis LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

MOTION FOR DEFAULT JUDGMENT
CASE NO. 3:19-CV-01277-JSC

**NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT**

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on August 13, 2020 at 9:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Jacqueline Scott Corley in Courtroom E of this Court located at 450 Golden Gate Avenue, 15th Floor, San Francisco, California 94102, Plaintiff Facebook, Inc. ("Facebook") will, and hereby does, move this Court for the entry of a default judgment against Defendants Gleb Sluchevsky and Andrey Gorbachov.  This Motion is made pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, as well as Article 15 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (the "Hague Convention").

This Motion is made on the grounds that service has been deemed effective under Article 15 of the Hague Convention, a default has been entered against Defendants based on their failure to respond to the Complaint or otherwise appear in the action, the Court has jurisdiction over the claims and parties, all of the factors set forth in *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986), favor granting default judgment, and a permanent injunction is necessary to prevent the irreparable harm caused by Defendants' scheme, which, by virtue of the default, now must be deemed admitted by Defendants. *See Baskin-Robbins Franchising LLC v. Pena*, 2020 WL 2616576, at *1 (N.D. Cal. May 7, 2020) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently-filed Declarations of Meghan Wleklinski and Steven E. Lauridsen, all pleadings and papers on file, and upon such oral argument as may be made at the hearing on this Motion.

DATED: July 9, 2020

Tucker Ellis LLP

By: /s/David J. Steele
    David J. Steele
    Howard A. Kroll
    Steven E. Lauridsen

    Attorneys for Plaintiff,
    Facebook, Inc.

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Houston ◆ Los Angeles ◆ San Francisco ◆ St. Louis

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On March 13, 2020, a default was entered in this matter.  ECF No. 22.  Based on Defendant Gleb Sluchevsky's and Andrey Gorbachov's failure to answer the Complaint, Plaintiff Facebook, Inc. ("Facebook") now seeks a default judgment.  "[D]efault judgments are more often granted than denied." *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999).  And here, there is no question a default judgment is necessary and proper.[1]  As detailed below, all of the *Eitel* factors heavily favor granting default judgment, and the requested injunction is necessary to stop Defendants' fraudulent activities.  *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).  A default judgment should be entered.

### II.   STATEMENT OF FACTS

After entry of default, "the well-pleaded factual allegations in [Facbook's] complaint, except those concerning damages, are deemed to have been admitted by the non-responding party."  *Baskin-Robbins Franchising LLC v. Pena*, 2020 WL 2616576, at *1 (N.D. Cal. May 7, 2020) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).  Accordingly, the Court can and should "accept[] the following allegations as true."  *Id.*

#### A.   Background Concerning Facebook

Facebook is a social networking website and mobile application that enables its users to create their own personal profiles and connect with each other on mobile devices and personal computers. Compl. ¶ 14.  As of September 2018, Facebook had more than 1.49 billion daily active accounts and over 2.2 billion monthly active accounts.  *Id.*

To create an account on Facebook, each user must register with a unique username and password. *Id.* ¶ 16. Registered users, in turn, can create profiles and make connections on Facebook, including as "friends."  *Id.*  Users who "friend" each other on Facebook agree to share posts and other connections.  *Id.*

---

[1] Under the Hague Convention a default judgment may be entered if (1) the complaint is transmitted in accordance with the Hague Convention; (2) at least six months have elapsed since the date of the transmission of the service documents; and (3) no certificate of any kind has been received, even though every reasonable effort has been made to receive a certificate.  Hague Conv., Art. 15.

Users then can segment their friends into discrete lists and set them to private so they are not publicly viewable.  *Id.* ¶ 16.

Facebook provides users with control over how to customize their profiles and how much personal information to include in a profile.  *Id*. ¶ 17.  In addition, Facebook's Privacy Settings provide users with control over how much information is viewable online and by whom.  For example, users may choose to share only portions of their profile and keep their list of Facebook friends "private."  *Id.*

Everyone who uses Facebook must electronically agree to Facebook's Terms of Service ("Terms") and other rules that govern different types of access to and use of Facebook, including Facebook's Community Standards and Platform Policy.  *Id*. ¶ 18.  Among other things, Facebook's Terms prohibit fake and inauthentic accounts (*id.* ¶ 19); using the Facebook platform to do anything unlawful, misleading or fraudulent (*id.*); and accessing or collecting data from Facebook's products using automated means without Facebook's express permission (*id.* ¶ 20).  The Community Standards prohibit similar behavior. *Id.* ¶ 21.  Additionally, Facebook's Platform Policy expressly prohibits third-party developers, including application developers, from "confus[ing], deceiv[ing], defraud[ing], mislead[ing], spam[ing], or surpris[ing] anyone," as well as using friend lists for any purpose beyond enhancing the app users' experience in the app.  *Id.* ¶¶ 22-23.

**B.**     **Defendants and Their Illegal Scheme**

Between 2016 and 2018, Defendants operated fraudulent third-party web applications designed to deceive internet users into installing malicious internet browser extensions[2] ("malicious extensions").  *Id*. ¶ 1.  Once someone installed one of Defendants' fraudulent applications, the user was prompted to install one of Defendants' malicious extensions.  *Id.* ¶¶ 32-38.  Users that installed the malicious browser extension compromised their own internet browser because, unbeknownst to those users, Defendants used the compromised browsers as a proxy to access Facebook computers without the users' or Facebook's authorization. *Id*. at 39. If the compromised user visited the Facebook site and accessed their account, the malicious extensions were programmed to use automated scripts designed to scrape and exfiltrate the

---

[2] Internet browser extensions alter the functionality of internet browsers like Google Chrome, Opera, and Firefox.  Internet browser extensions are available from online browser stores like the Chrome Web Store.  Compl. ¶¶ 28–30.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

compromised users' publicly viewable profile information (*i.e.*, name, gender, age range, profile picture) and private (or non-publicly viewable) list of friends from Facebook.  *Id.* ¶¶ 39-43.  Defendants also used the malicious extensions to inject advertisements into the app users' Facebook News Feeds without users' knowledge or Facebook's authorization.  *Id.* ¶¶ 32, 43.  In total, Defendants compromised thousands of browsers used by Facebook users, hundreds of whom are California residents.  *Id.*; *see also generally id.* ¶¶ 24-43 (detailing technical details of Defendants' operations).

### C.     The Filing of This Action and Subsequent Entry of Default

On March 8, 2019, Facebook filed this action against Defendants.  ECF No. 1.  Both Defendants reside in Ukraine.  *Id.* ¶ 3.  Promptly after filing this action and in accordance with the Hague Convention, Facebook translated all of the case-initiating documents into Ukrainian so that they could be served via the Hague Convention.  Declaration of David J. Steele ("Steele Decl.") ¶ 2 (ECF No. 19-3).  Facebook hired Celeste Ingalls, a Hague Convention service expert, to assist in effecting service.  *Id.*; Declaration of Celeste Ingalls ("Ingalls Decl.") ¶¶ 1-5 (ECF No. 19-2).  On May 9, 2019, Ms. Ingalls initiated the service process required by the Hague Convention by sending all required documents to the Ministry of Justice of Ukraine ("Ministry of Justice"), which is Ukraine's Central Authority.[3]  Ingalls Decl. ¶ 9.  Ms. Ingalls received confirmation that the Ministry of Justice received all required service documents on May 21, 2019.  *Id.* ¶ 10 & Ex. 1.  As of the date of this filing, certificates of service have not been received from the Ministry of Justice despite making every reasonable effort to obtain such certificates.  *Id.* ¶ 13(c).

In addition to pursuing service under the Hague Convention, Facebook's attorneys attempted to send courtesy copies of the pertinent filings to both Defendants by hand delivery[4] and by email on May 13, 2019.  Steele Decl. ¶ 3 & Ex. 1.  Facebook's attorneys also sent Defendants a waiver of service form and requested that they sign and return it.  Defendants did not respond to any of the emails.  Steele Decl. ¶¶ 4-5.

---

[3] The Hague Convention "requires each state to establish a central authority to receive requests for service of documents from other countries."  *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988).

[4] Facebook's attempts at hand delivering the documents have been unsuccessful to date as it appears that the addresses known to Facebook and its counsel are no longer valid.  Steele Decl. ¶ 3 & Ex. 2.  Facebook has made delivery attempts at multiple addresses.  *Id.* ¶ 3.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

On August 13, 2019, Facebook sent a follow-up letter by email[5] to all known email addresses for Defendants, wherein Facebook again discussed service and also requested that Defendants meet and confer pursuant to Rule 26(f) and this Court's Civil Local Rules. *Id.* ¶ 6 & Ex. 3. Subsequently, on August 14, 2019, an attorney for Defendant Sluchevsky, Eugene Rome of Rome & Associates, A.P.C., contacted Facebook's counsel and indicated that he had been retained to represent Sluchevsky, but that Sluchevsky did not authorized him to appear in this action or to accept service. Steele Decl. ¶ 7. Facebook has not received a response from Defendant Gorbachov as of the filing of this motion. However, Mr. Rome represented that Defendant Gorbachov had notice of this action. *Id.* Despite Defendants having notice of this action, Defendants have refused to appear or respond to the complaint. Nor have Defendants challenged the default that has been entered against them.[6]

Because more than six months had passed since Facebook initiated service of process through the Hague Convention without having received a certificate of any kind from the Ministry of Justice, Facebook moved for the entry of default against both Defendants. ECF No. 19. The Clerk of Court entered default on March 13, 2020. ECF No. 22.

## III.   THIS COURT HAS BROAD DISCRETION TO GRANT DEFAULT JUDGMENT

A district court may grant default judgment after the Clerk of the Court has entered a default. Fed. R. Civ. P. 55(b). A court's decision to enter a default judgment is discretionary. *Tech. LED Intellectual Prop., LLC v. Revogi, LLC*, 2019 U.S. Dist. LEXIS 108948, *6 (N.D. Cal. June 27, 2019) (Corley, J.) (relying on *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)). To determine whether a default judgment should be entered, courts consider the following *Eitel* factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the likelihood of obtaining a decisions on the merits, which is favored.

---

[5] Of the ten email addresses for Defendants of which Facebook is aware, emails to four of them were returned as undeliverable. Steele Decl. ¶ 6. However, Facebook believes the remaining email addresses are valid given Defendants' actual knowledge of this action. *Id.*

[6] Facebook's counsel has emailed Mr. Rome copies of the entry of default and will email him a copy of this motion once it is filed. Declaration of Steven E. Lauridsen Exs. 1-2.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

*Tech. LED Intellectual Prop.,* 2019 U.S. Dist. LEXIS 108948 at *6 (citing *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986)).  Here, the *Eitel* factors tip sharply in one direction—the entry of a default judgment against Defendants.

When a default judgment is sought against a non-appearing party, a court must also examine its subject matter jurisdiction over the causes of action and its personal jurisdiction of the non-appearing party, including whether the "procedural requirement of service of summons" has been satisfied.  *Tech. LED Intellectual Prop.,* 2019 U.S. Dist. LEXIS 108948 at *4-6 (citing *In re Tuli*, 172 F.3d 707, 712, (9th Cir. 1999)).

## IV.   DEFAULT JUDGMENT IS WARRANTED

### A.   This Court Has Jurisdiction to Enter Default Judgment

District courts have an affirmative duty to examine their jurisdiction—both subject matter and personal jurisdiction—when default judgment is sought against a non-appearing party. *Id.*  This Court has both subject matter and personal jurisdiction and the procedural requirement of service of summons has been satisfied.

#### 1.   The Court has subject matter jurisdiction over the claims.

The Court has federal question jurisdiction under 28 U.S.C. § 1331 because Facebook brought a claim under the federal Computer Fraud and Abuse Act.  Compl. ¶ 7, 48-58. The Court has supplemental jurisdiction over the state law causes of action alleged—breach of contract, fraud, and California Comprehensive Computer Data Access and Fraud Act—pursuant to 28 U.S.C. § 1367 because those claims arise out of the same nucleus of operative fact as Facebook's federal claim:  all of the claims relate to Defendants' fraudulent scraping scheme.  *Id.* ¶¶ 7-8.

The Court also has diversity jurisdiction under 28 U.S.C. § 1332.  Complete diversity exists because Facebook is a citizen of California, and Defendants are citizens of Ukraine.  *Id.* ¶¶ 2-3.  Moreover, the amount in controversy exceeds $75,000.  *Id.* ¶ 9.

#### 2.   Defendants consented to personal jurisdiction under the Facebook Terms.

Everyone who uses Facebook must electronically agree to Facebook's Terms.  *Id.* ¶ 18. Defendants consented to personal jurisdiction in this Court when they created Facebook accounts and used Facebook, because the Facebook Terms contain a forum selection clause.  *Id.* ¶ 10.

6

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

A forum selection clause is construed as consent by the parties to the personal jurisdiction of the courts of the selected forum. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007). Forum selection clauses are equally applicable to contractual and tort causes of action. *Maneti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (citing *Costal Steel Corp. v. Tilghman Wheelabrator* Ltd., 709 F.2d 190, 203 (3d Cir 1983)). Forum selection clauses, like the one found in Facebook Terms, are *prima facie* valid and specifically enforceable unless the party opposing the clause clearly shows "that enforcement would be unreasonable and unjust, or that the clause is invalid for such reasons as fraud or overreaching." *Maneti-Farrow*, 858 F.2d at 512 (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). And courts have consistently affirmed the validity of Facebook's forum selection clause. *See, e.g., Hayes v. Facebook*, *Inc. et al.*, Case No. 18-cv-02333-MEH, Doc. 54 at 4 (D. Col. Mar. 6, 2019) (enforcing Facebook's forum selection clause); *Thomas v. Facebook, Inc.*, Case No. 18-cv-00856-LJO-BAM, Doc. 14 at 7, (E.D. Cal. Aug. 15, 2018) ("the Court is not aware of any case concluding that the forum selection clause in Facebook's SSR [now the TOU] is invalid") (citing *Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153, 1159-60 (D. Haw. Feb. 6, 2018); *Franklin v. Facebook, Inc.*, 2015 WL 7755670, at *2 (N.D. Ga. Nov. 24, 2015); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D. NY 2012)); *but see Facebook, Inc. v. Rankwave Co.*, 2019 U.S. Dist. LEXIS 231300, *15-17 (N.D. Cal. Nov. 13, 2019) (declining to enforce Facebook's forum selection clause but finding specific jurisdiction over the defendants). The party opposing a forum selection clause must "show that a trial in the contractual forum would be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *The Bremen*, 407 U.S. at 18.

In sum, Defendants agreed to Facebook's forum selection clause and consented to personal jurisdiction in this Court. Compl. ¶ 10. Despite being aware of the filings and the proceedings have specifically chosen not to contest the application of the forum selection clause or otherwise contest jurisdiction. Accordingly, the Court should find it has personal jurisdiction over Defendants.

### 3. The Court has specific personal jurisdiction over Defendants.

Separately, this Court has specific jurisdiction over Defendants based on their contacts with this forum. Personal jurisdiction over a nonresident defendant is proper "if permitted by a state's long-arm

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

statute[7] and if the exercise of that jurisdiction does not violate federal due process." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013).  To satisfy due process, a nonresident defendant must have "minimum contacts" with the forum such that the assertion of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316(1945).

Where, as here, specific jurisdiction is alleged, jurisdiction exists whenever a defendant: (1) purposefully directs activities at the forum or its residents or performs some act by which it purposefully avails itself of the privilege of conducting activities in the forum; (2) the claim arises out of, or relates to those activities; and (3) the exercise of jurisdiction is reasonable.  *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc*., 223 F.3d 1082, 1086 (9th Cir. 2000); *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).  "The plaintiff bears the burden of satisfying the first two prongs of the test." *Giotta v. Ocwen Fin. Corp.*, 2015 U.S. Dist. LEXIS 167108, *9 (N.D. Cal. Dec. 11, 2015) (quoting *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2003)).  Once the plaintiff does so, a defendant must set forth a "compelling case" that the exercise of jurisdiction would not be reasonable.  *CollegeSource, Inc. v. AdademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

"Purposeful availment" and "purposeful direction" under the specific jurisdiction test are distinct concepts.  *Schwarzenegger, 374 F.3d at 802-3.*  A purposeful availment analysis is used in contract disputes; and a purposeful direction analysis is used cases alleging tort claims.  *Id.*  The Complaint in this case alleges both tort and contract claims. This Court has personal jurisdiction over Defendants because Defendants both availed themselves of the privilege of conducting business in California and purposefully directed their activities at California.

### a)   Purposeful availment.

Defendants availed themselves to the benefits and protections of a California forum.  Collectively, Defendants created and controlled at least thirteen Facebook accounts and thirteen Facebook Pages.

---

[7] California's long-arm statute authorizes specific personal jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause of the United States Constitution.  *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.1998).

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Compl. ¶ 11.  Each time Defendants created a Facebook user accounts or Facebook Pages they contracted with Facebook in California and agreed to California law in the choice-of-law provision in the Terms.  *Id.* ¶¶ 10 and 11;  *see also Google, Inc. v. Eolas Techs. Inc.*, 2014 WL 2916621, at *3 (N.D. Cal. June 24, 2014) (finding a defendant's agreement to a California choice-of-law provision evidenced that the defendant availed itself of the benefits and protections of California law); *Rankwave*, 2019 U.S. Dist. LEXIS 231300 at *15-17 (finding specific jurisdiction based, in part, on Defendant's acceptance of the California choice-of-law provision in Facebook Terms).

Defendants also marketed their malicious extensions and made them available for download on the Google Web Store, which is controlled and managed by another company located in California.  Like the choice-of-law provision in Facebook's Terms of Service, Google's Terms of Service also include a California choice-of-law provision.[8]  Defendants therefore availed themselves of California to perpetrate their schemes, and Facebook meets the first element for specific jurisdiction on that basis alone.

### b) Purposeful direction.

"Purposeful direction" exists when a defendant commits intentional acts expressly aimed at the forum state that cause harm the defendant knows is likely to be suffered in the forum state.  *Calder v. Jones*, 465 U.S. 783, 788 (1984); *see also Brayton Purcell*, 575 F.3d at 985-86 (adopting the "*Calder*-effects" test to determine purposeful direction prong). There is no question Defendants "purposefully directed' their activities at California.

Defendants committed intentional acts when they used malicious extensions for the specific purpose of scraping Facebook users' profiles and injecting unauthorized advertisements into users' Facebook News Feed.  Compl.  ¶¶ 31-43.  As alleged in the Complaint, Defendants specifically used "scripts that were designed to send commands to Facebook's HTTP servers . . . ." *Id.* ¶¶ 39-43.

Defendants directed those acts at California and caused harm that Defendants knew was likely to be suffered by Facebook in California.  *Id.* ¶¶ 2 and 11.  Over 37,000 Facebook users in California installed Defendants' fraudulent apps.  *See Id.* at ¶ 11; Declaration of Meghan Wleklinski ("Wleklinski Decl.") ¶ 3. Facebook had to expend resources to detect and remediate Defendants' activities.  *Id.* ¶¶ 44-47.  Facebook

---

[8] Google's Terms of Service are available at https://policies.google.com/terms.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

deployed those resources in California where it is headquartered and where its computer network is maintained, leaving no doubt that Defendants inflicted harm in California.  *See Id.*

It is a well-known fact that Facebook is based in California.  *See Rankwave*, 2019 U.S. Dist. LEXIS 231300 at *19 (stating that it is a well-known fact that Facebook is based in California). Therefore, by distributing their fraudulent apps to California residents (Wleklinski Decl. ¶ 3), scraping data from Facebook users, accessing Facebook severs without authorization, and injecting unauthorized advertisements on Facebook's News Feed, Defendants knew their illicit conduct was directed at California and knew it would cause harm in California.  *See CollegeSource*, 653 F.3d at 1080 ((finding "[a]ctions directed at a forum resident expected to cause harm in the forum constitute purposeful injection"); *see also Dole Food Co. v. Watts*, 303 F.3d 1104, 1113-14 (9th Cir. 2002) (stating "a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business"); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F.Supp.2d 1039, 1053 (N.D. Cal. 2010) (finding that "[b]ecause Plaintiff is headquartered in California and maintains its website in California, Defendants' actions directly targeted California, and Defendants knew that Plaintiff would suffer the brunt of its harm in California").  By all counts, Defendants purposefully directed intentional acts at California and caused harm here.

### c)      Arising from forum related activities.

The "arising from" requirement similarly is satisfied here.  Facebook would not have been injured "but for" Defendants' forum-related activities.  *Learjet Inc. v. Oneok, Inc.*, 715 F.3d 716, 742 (9th Cir. 2013).  As shown above, Defendants expressly targeted a California entity, its California-based computer network, and its California users (Wleklinski Decl. ¶ 3), all in a manner that caused harm felt in California. *CollegeSource*, 653 F.3d at 1079 (stating that "[w]e have repeatedly held that a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business."); *Nissan Motor Co. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154, 1160 (C.D. Cal. 2000) ("defendant's intentional exploitation of the plaintiffs' goodwill … had the effect of injuring [plaintiff] in California.  But for the [defendant's] conduct, this injury would not have occurred.").  The "arising from" element, therefore, is satisfied.

### d)      Defendants have not and cannot show unreasonableness.

MOTION FOR DEFAULT JUDGMENT
CASE NO. 3:19-CV-01277-JSC

"Because the first two requirements for exercising specific personal jurisdiction ha[ve] been established," Defendants must present a "compelling case" that the assertion of jurisdiction would be unreasonable.  *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1094 (N.D. Cal. 2014).  Defendants, however, have "waived [their] opportunity to make this showing by failing to participate in this litigation."  *Id.*  Nor could Defendants meet their heavy burden in any event.  As stated above, Defendants specifically targeted Facebook, a known California company, through their fraudulent scheme.  Thus, Defendants "had 'fair warning' that [they] might be sued in California.  *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

### 4. Service has long been deemed complete under the Hague Convention.

As detailed in Facebook's motion for the entry of default (ECF No. 19), Facebook satisfied the Hague Convention's service requirements long ago.  Where, as here, service is through the Hague Convention, Federal Rule of Civil Procedure 4(f)(1) permits the entry of judgment when:  (1) the complaint is transmitted in accordance with the Hague Convention; (2) at least six months have elapsed since the date of the transmission of the service documents; and (3) no certificate of any kind has been received from the central authority, even though every reasonable effort has been made to receive a certificate.  *See* Hague Convention, Art. 15.  Courts routinely enter judgment against defaulting defendants under Article 15 of the Hague Convention, and the Court should do so here.  *See, e.g., Senah, Inc. v. AVIC Forstar S&T Co.*, 2019 WL 5068688 (N.D. Cal. July 2, 2019);  *CGI Techs. & Sols. Inc. v. Acacio*, 2019 WL 7882368, at *2 (C.D. Cal. Mar. 26, 2019); *Meemic Ins. Co. v. Vertical Partners W., LLC*, 2019 WL 4928806, at *3 (E.D. Mich. Oct. 6, 2019) (entering judgment after six months and only twice inquiring into the status of service); *China Int'l Marine Containers (Grp.) Ltd. v. Jiangxi Oxygen Plant Co.*, 2017 WL 6403886, at *2 (S.D. Tex. Feb. 15, 2017) (entering judgment after nine months and only twice inquiring into the status of service); *Leger v. Rivers Edge Treestands, Inc.*, 2016 WL 909173, at *3 (E.D. Tex. Feb. 8, 2016) (recommending entry of judgment after six months).

Here, Facebook initiated service on Defendants pursuant to the Hague Convention on May 9, 2019—over a year ago.  Ingalls Decl. ¶ 9.  The Ministry of Justice received the requisite service documents on May 21, 2019.  *Id.* ¶ 13(a).  Facebook followed up diligently with the Ministry of Justice— in particular, through inquiries submitted on September 10, 2019, November 5, 2019, December 23, 2019,

Tucker Ellis LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

and February 14, 2020. *Id.* ¶ 13(c). More than 13 months[9] have passed without the Ministry of Justice issuing certificates of any kind. *Id.* Consistent with the entry of default against Defendants, service has long been effected.

**B.    The *Eitel* Factors Weigh Heavily in Favor of Granting Default Judgment**

Here, consideration of the *Eitel* factors weighs heavily in favor of granting default judgment. Taking those factors in turn:

**1.    Facebook will be prejudiced absent entry of default judgment.**

The first *Eitel* factor considers "whether the plaintiff will suffer prejudice if the court denies default judgment." *Baskin-Robbins*, 2020 WL 2616576, at *7 (citing *Naturemarket*, 694 F. Supp. 2d at 1039. As in *Baskin-Robbins*, "absent a default judgment," Facebook will be prejudiced by the lack of any judicial remedy to prevent Defendants from continuing their scraping campaign. Nor would Facebook be able to recover the significant fees and costs it has expended to obtain redress for Defendants' wrongdoings. Accordingly, this factor favors granting default judgment. *See, e.g.*, *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (finding the "[p]otential prejudice to Plaintiffs favors granting a default judgment" where denying the requested default judgment would leave plaintiffs "without other recourse for recovery"); *Philip Morris USA, Inc. v. Castworld Prods.*, Inc., 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("Plaintiff would suffer prejudice if the default judgment is not entered because Plaintiff would be without other recourse for recovery [and] … Plaintiff will likely suffer great prejudice through the loss of sales and diminution of goodwill if default is not entered.").

**2.    Facebook's claims are meritorious and well founded.**

The second and third *Eitel* factors require the plaintiff "to plead facts sufficient to establish and succeed upon its claims." *Tech. LED Intellectual*, 2019 U.S. Dist. LEXIS 108948 at *7 (quoting *Craigslist*, 694 F. Supp. 2d at 1055). As stated above, the "well-pleaded factual allegations in the

---

[9] While Facebook need not have done so to obtain a default under the Hague Convention, Facebook nonetheless took all reasonable steps to provide actual notice of this action to Defendants, including this motion. As stated above, those efforts succeeded. At least as far back as August 2019, Defendant Sluchevsky's attorney acknowledged that Defendants were aware of this lawsuit.

MOTION FOR DEFAULT JUDGMENT
CASE NO. 3:19-CV-01277-JSC

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

complaint, except those concerning damages, are deemed to have been admitted by the non-responding party." *Id.* As a consequence, the "district court is not required to make detailed findings of fact." *Id.* (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002)).

### a)    Facebook's statutory claims are meritorious and well founded.

Defendants violated Sections 1030(a)(4) and 1030(a)(5)(A)-(C) of the Computer Fraud and Abuse Act ("CFAA"). Compl. ¶¶ 51-54. To state a Section 1030(a)(4) claim, Facebook need only allege that Defendants: (1) accessed a "protected computer;" (2) without authorization or exceeding such authorization that was granted; (3) "knowingly" and with "intent to defraud;" and thereby (4) "further[ed] the intended fraud and obtain[ed] anything of value;" causing (5) a loss to one or more persons during any one-year period aggregating at least $5,000 in value. *See* 18 U.S.C. § 1030(a)(4)(a); *Facebook, Inc. v. Grunin*, 77 F. Supp. 3d 965, 971 (N.D. Cal. 2015). Section 1030(a) also "creates liability for whomever: (5)(A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer; (5)(B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; (5)(C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss." 18 U.S.C. § 1030(a)(5); *see also Parziale v. HP, Inc.*, 2020 WL 1976481, at *9 (N.D. Cal. Apr. 24, 2020). Defendants are liable under each of those provisions.

*First*, Facebook's HTTP servers are "protected computers" because they are involved in interstate and foreign commerce or communications. Compl. at 49; 18 U.S.C. § 1030(e)(2)(A). Indeed, Defendants accessed Facebook's HTTP servers, which provided services to users in multiple states as well as foreign countries. Compl. ¶¶ 41, 49.

*Second*, Defendants accessed Facebook's HTTP servers without authorization from Facebook or its users. *Id.* ¶ 39. Defendants deceived the users of their applications into installing malicious browser extensions that contained computer code designed to compromise the users' browser. *Id.* ¶¶ 32, 36, 39, 41. Once a user's browser was compromised, if the user visited the Facebook site and logged into their account, Defendants used the compromised browser as a proxy to access Facebook's HTTP endpoints without Facebook's authorization. *Id.* ¶ 39. In other words, the compromised browser gave Defendants

Tucker Ellis LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

access to the compromised users' Facebook accounts, without Facebook's authorization. *Id.* Further, Defendants used their unauthorized access to inject automated scripts in the form of JavaScript files to scrape the users' list of friends on Facebook. *Id.* ¶ 41. These scripts were specifically designed to send commands to Facebook's HTTP servers, while the user was logged into their Facebook account, purporting to originate from the user and collect their private list of friends. *Id.*[10] Defendants likewise used their unauthorized access to send automated scripts to Facebook to insert unauthorized advertisements into News Feeds. *Id.* ¶ 42. Neither Facebook nor the compromised users agreed to the collection of user profile information from Facebook nor the injection of advertisements into News Feeds. *Id.* ¶¶ 39-42.

*Third*, Defendants did so knowingly and with intent to defraud. Defendants used fraudulent apps and malicious extensions to compromise users' browsers in the first instance. *Id.* ¶¶ 32, 34-36. Defendants then falsely represented the level of access their fraudulent apps would obtain to users' Facebook profile information when the users installed Defendants' fraudulent apps. *Id.* ¶¶ 32, 35. As alleged, Defendants used fraud, malicious extensions, and other computer code to improperly access and scrape user profile information from Facebook to further their fraudulent scheme. *Id.* ¶¶ 33-43, 50. Indeed, Defendants accessed Facebook's HTTP servers, by sending unauthorized commands, through the malicious extensions, that purported to originate from Facebook users. *Id.*

*Fourth*, Defendants obtained value from the data they collected and the unauthorized advertisements they placed. *Id.* ¶ 51.

*Finally*, Defendants caused Facebook damages and a loss of at least $5,000 during a one-year period. "Damage" means "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). "Loss" includes for "any reasonable cost to any victim." 18 U.S.C. § 1030(e)(11). Facebook suffered both as a result of Defendants' conduct. *Id.* ¶¶ 52-57.

---

[10] The CFAA claims conform with the *HiQ Labs, Inc. v. LinkedIn Corp.* decisions. *See* 938 F.3d 985 (9th Cir. 2019), *aff'g* 273 F. Supp. 3d 1099 (N.D. Cal. 2017). Specifically, the Ninth Circuit distinguished the facts of HiQ as an instance of non-logged-in scraping of publicly available data. *HiQ Labs*, 938 F.3d at 1002 (affirming *Facebook Inc. v. Power Ventures*, 844 F.3d 1058 (9th Cir. 2016). In this case, Plaintiffs have specifically alleged that the conduct at issue was logged-in scraping of non-publicly available data. Compl. ¶¶ 32, 36, 39, 41

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Facebook has standing to bring an action under section 1030 because any person who suffers a loss or damages as a result of a violation of 18 U.S.C. § 1030 has standing to bring a civil action for a violation of that section.  18 U.S.C. § 1030(g), *see also Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2003).   The complaint alleges that Facebook suffered a loss resulting from investigating and remediating Defendants' conduct.  *Id.* ¶ 57.  Likewise, the Complaint also asserts Defendants' conduct damaged Facebook.  *Id.* ¶¶ 52-54, 57.

Relatedly, in addition to the requirements for standing and the statutory elements, any civil action brought under Section 1030 must allege conduct that involves one of the factors set forth in subclauses (I) - (V) of subsection (c)(4)(A)(i).  18 U.S.C. § 1030(g).  This requirement has been satisfied because the complaint alleges that Defendants' conduct caused a loss to Facebook during a one-year period in excess of $5,000.  *See* 18 U.S.C. § 1030(c)(4)(A)(i)(I); *Id.* ¶ 56.

The Comprehensive Computer Data Access and Fraud Act ("CCDAF") is the California corollary to the CFAA.[11]  Cal. Penal Code § 502.  "Since the necessary elements of [the CCDAF] do not differ materially from the necessary elements of the CFAA," and given Facebook's CCDAF claim is based on the same facts as its CFAA claim, Facebook has pled properly a claim for relief under both statutes. *Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 895 (N.D. Cal. 2010).

### b)      Facebook's breach of contract claim is meritorious and well founded.

To state a claim for breach of contract, Facebook need only allege facts showing:  (1) the existence of a contract; (2) plaintiff's performance or excuse for non-performance; (3) defendant's breach; and (4) resulting damages.  *Grunin*, 77 F. Supp. 3d at 970. Each element is met here.

---

[11] Similar to the CFAA, the CCDAF imposes liability on an individual who:  "(1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.

(2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.

(3) Knowingly and without permission uses or causes to be used computer services … .

(7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network."  *Multiven*, 725 F. Supp. 2d at 895.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

*First*, valid contracts exist between Facebook and Defendants.  Facebook's services are governed by its Terms and Policies.  Compl. ¶¶ 18-23, 67.  As alleged in the complaint, Defendants agreed to Facebook's Terms, Community Standards, and Platform Policy when they created their accounts and accessed Facebook's services."  *Grunin*, 77 F. Supp. 3d at 970; Compl. ¶¶ 18, 68.  Section 3.1 of the Terms specifically requires Facebook users to: (a) "Use the same name that [they] use in everyday life;" (b) "Provide accurate information about [themselves];" and (c) "Create only one account (your own)[.]" Compl. ¶ 19.  Section 3.2 of the Terms prohibits the use of Facebook to do anything "[t]hat is unlawful, misleading, discriminatory or fraudulent," or anything "[t]hat infringes or violates someone else's rights," or to "access or collect data from our Products using automated means (without our prior permission) or attempt to access data you do not have permission to access."  *Id*.  ¶ 20.  Similar to section 3.1 of the Terms, the Community Standards prohibit user from misrepresenting their identities or misusing their profiles in a variety of ways.  *Id.* ¶ 21.  Section 1 of the Platform Policy requires that third-party developers not "confuse, deceive, defraud, mislead, spam, or surprise anyone." *Id.* ¶ 22.  And Platform Policy section 3.3 restricts developers from using friends lists for any purpose other than enhancing the app users' experience in the application. *Id.* ¶ 23.

*Second*, Facebook performed its end of the bargain by allowing Defendants access to the Facebook platform.  *Id.* ¶ 69.

*Third*, Defendants breached Facebook's Terms, Community Standards, and Platform Policy when they improperly accessed Facebook and scraped data from Facebook without permission as set forth in the Complaint and in Section B.2.a, above.  *Id*. ¶¶ 32-43.  Specifically, Defendants used false names to create different accounts on Facebook.  This violates Section 3.1 and Facebook's Community Standards. Further, Defendants used misleading and fraudulent applications and browser extensions to gain access to the compromised users' Facebook accounts, and used automated JavaScripts to scrape and inject ads on the Facebook service.  This is all in violation of Section 3.2 of the Terms and Section 1 of the Platform Policy because it "unlawful, misleading . . . or fraudulent" and Defendants accessed and collected data from Facebook using automated means.  Similarly, Defendants' conduct violated section 3.3 of the Platform Policy when they scraped app users' private (non-publicly viewable) lists of friends. *Id.* ¶¶ 35-36.

Tucker Ellis LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

*Finally*, as a direct result of Defendants' actions, Facebook suffered damages. *Id*. ¶¶ 44-47, 71. Among other things, Facebook had to expend resources to investigate and remediate Defendants' breaches. Facebook's breach of contract claim is meritorious and well founded.

### c)    Facebook's fraud claim is meritorious and well founded.

To state a fraud claim, Facebook need only allege: "(a) misrepresentation; (b) knowledge of falsity; (c) intent to defraud, *i.e.,* to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Fotaleza v. PNC Fin. Servs/ Group, Inc.*, 642 F. Supp. 2d 1012, 1021 (N.D. Cal. 2009). Facebook pleads each of those elements properly, and those allegations must be accepted as true.

As detailed in the Complaint, Defendants created fake developer accounts on Facebook using knowingly false information in violation of Facebook's Terms and Policies. Compl. ¶ 74. Defendants also falsely represented that they intended to comply with Facebook's Terms and Policies. *Id.* As a result of the foregoing, Defendants gained access to Facebook's platform. *Id.* Defendants intended that their misrepresentations would be relied on by Facebook, and Facebook reasonably did so as evidenced by its grant of access to Defendants to Facebook's platform—access that Facebook never would have granted had it known of Defendants' undisclosed plan to use false information to open accounts, to scrape data, and to inject unauthorized advertisements into News Feeds. *Id.*

Defendants also knowingly and intentionally deceived Facebook users into installing malicious extensions. *Id*. ¶¶ 39-47, 75. Defendants then used the malicious extensions to scrape Facebook users' lists of friends by sending commands to Facebook, which were designed to appear as if they came from a legitimate Facebook user rather than Defendants' malicious extensions. *Id.* Defendants intended that those fraudulent commands would be relied on by Facebook, and Facebook reasonably relied on them when it permitted Defendants to access app users' lists of friends on Facebook's servers. *Id.* Facebook would not have granted such access had it known of the commands' provenance and purpose.

Defendants' fraudulent conduct and Facebook's reliance thereon proximately and directly caused Facebook to suffer significant economic injury. *Id*. ¶¶ 44-47, 56, 76. Indeed, Facebook's reliance on Defendants' misrepresentations was a substantial factor in causing Facebook's injuries. *Id.* Facebook's fraud claim is meritorious and well founded.

### 3.    The amount of money at stake supports a default judgment.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Under the fourth *Eitel* factor, a "[c]ourt must consider the amount of money at stake in relation to the seriousness of Defendants' conduct." *Tech. LED Intellectual*, 2019 U.S. Dist. LEXIS 108948 at *9 (citing *Eitel*, 782 F.2d at 1471-72). "[D]efault judgment is appropriate where it is "tailored to [the defendant's] specific misconduct." *Id.* (citing *Bd. of Trs. v. Superhall Mech., Inc.*, 2011 WL 2600898, at *2 (N.D. Cal. June 30, 2011)). This factor is readily dispensed with.

Even though it is entitled to them, Facebook does not seek any monetary damages through this motion. Rather, as set forth more fully below, Facebook seeks injunctive relief only, as well as attorneys' fees and costs. Accordingly, this factor strongly favors granting default judgment.

### 4.     There exists no potential dispute of material facts.

Under the fifth *Eitel* factor, the court considers whether material facts are in dispute. *Id.* at 11. Here, there are none. "Upon the Clerk's entry of default, Defendants were 'deemed to have admitted all well-pleaded allegations' in the complaint." *Baskin-Robbins*, 2020 WL 2616576, at *9 (citing *Geddes*, 559 F.2d at 560). Accordingly, this factor favors granting default judgment.

### 5.     There is no evidence of excusable neglect in the record.

The sixth *Eitel* factor considers whether default was entered as a result of excusable neglect by Defendants. *Tech. LED Intellectual*, 2019 U.S. Dist. LEXIS 108948 at *6. This factor favors the entry of a default judgment "where the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." *Baskin-Robbins*, 2020 WL 2616576, at *9 (quoting *Wecosing, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012)). As detailed above and in Facebook's motion for the entry of default, Defendants know about this litigation *and* service is deemed complete under Article 15 of the Hague Convention. Despite Defendants having notice of this action, Defendants have refused to appear. On those facts, "[t]here is no basis here to conclude that Defendants' default resulted from excusable neglect." *Id.* Accordingly, this factor weighs in favor of the entry of default judgment.

### 6.     There is no likelihood of a decision on the merits under these circumstances.

The final *Eitel* factor balances the entry of default judgment against the preference for deciding cases on the merits. *Eitel*, 782 F.2d at 1472. "This factor is not dispositive, however, and a defendant's failure to answer the complaint 'makes a decision on the merits impractical, if not impossible.'" *Baskin-*

Tucker Ellis LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

*Robbins*, 2020 WL 2616576, at *10 (quoting *Cal. Sec. Cans*, 238 F. Supp. 2d at 1177).  As this Court has held, "termination of a case before hearing the merits is permissible when a defendant fails to defend an action."  *Id.*  And here, given Defendants' failure to appear, a "decision on the merits is impossible."  *Id.*  This factor too favors the entry of default judgment.

In conclusion, all of the *Eitel* factors weigh heavily in favor of granting default judgment.

## C.      Facebook is Entitled to a Permanent Injunction

"It is appropriate to grant an injunction on an application for default judgment" consistent with the demands of the Complaint.  *Craigslist, Inc. v. RealWorks Group LLC*, 2009 WL 10692489, at *5 (N.D. Cal. Oct. 29, 2009); *see also* Fed. R. Civ. P. 54(c).  And here, both the CFAA and CCDAF permit and entitle Facebook to a permanent injunction in the form demanded in the complaint.  Compl., Prayer ¶ 2(a)-(e); *see* 18 U.S.C. § 1030(g); Cal. Penal Code § 502(e)(1).[12]

Permanent injunctive relief is appropriate when (1) the plaintiff risks suffering irreparable harm; (2) monetary remedies are inadequate to compensate for plaintiff's injury; (3) the balance of hardships favors the plaintiff; and (4) the public interest would not be disserved by an injunction.  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Here, those factors heavily favor an injunction.

As to the first two factors, Facebook has suffered—and continues to suffer—irreparable harm to its reputation, goodwill, and the fundamental ability to control access to its own computers that monetary damages cannot rectify.  Compl. ¶¶ 71, 76; *Power Ventures, Inc.*, 252 F. Supp. 3d at 782 ("[I]n accessing Facebook's computers without authorization, Defendants have interfered with Facebook's right to control access to its own computers and have acquired data to which Defendants have no lawful right in violation of the CFAA and § 502 . . . Additionally, unless the Court issues a permanent injunction, it is very likely that Facebook will suffer irreparable harm again because Defendants will again attempt to access Facebook's servers without authorization.  Defendants have frequently exhibited bad faith conduct that

---

[12] In particular, Facebook seeks an order enjoining and restraining Defendants and their agents, servants, employees, successors, and assigns, and all other persons acting in concert with or conspiracy with any of them or who are affiliated with Defendants from: a) Soliciting, storing, and/or using Facebook login information from any current, past, or future Facebook user; b) Accessing or attempting to access Facebook's website and computer systems; c) Creating or maintaining any Facebook accounts; d) Engaging in any activity that disrupts, diminishes the quality of, interferes with the performance of, or impairs the functionality of Facebook's website; and e) Engaging in any activity, or facilitating others to do the same, that violates Facebook's TERMS and Policies, or other related policy.

19

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

indicates that they will not easily be deterred from attempting to access Facebook's servers without authorization in violation of the CFAA and § 502.").

As to the second factor, the balance of hardships tips sharply in Facebook's favor:  the requested injunction merely seeks Defendants' compliance with the law.  *Power Ventures, Inc.*, 252 F. Supp. 3d at 784; *Grunin*, 77 F. Supp. 3d at 973.

As to the third factor, the public interest would be served by an injunction.  Indeed, the "public has an interest in ensuring that computers are not accessed without authorization."  *Power Ventures*, 252 F. Supp. at 785; *see also Stackla, Inc. v. Facebook, Inc.*, 2019 U.S. Dist. LEXIS 167324, *17 (N.D. Cal. Sept. 27, 2019)(J. Hamilton) (stating "Facebook's ability to decisively police the integrity of its platform is without question a pressing public interest . . . [and] the public has a strong interests in . . . Facebook's protection of its users' privacy").  On the other hand, it would be a great disservice to the public to allow Defendants to continue to surreptitiously harvest Facebook user data and perpetrate their fraudulent scheme.  The requested injunction is warranted.

### D.   Facebook is Entitled to Attorneys' Fees and Costs

The Court should award Facebook its attorneys' fees and costs.  Courts may award attorneys' fees in any action brought under Section 502(e)(2) of the CCDAF.  *Power Ventures*, 2017 WL 3394754, at *6-7 (awarding Facebook fees under California Penal Code § 502(e)(2)).  And here, the well-pled allegations of Facebook's CCDAF claim have been admitted by virtue of Defendants' default.  As the prevailing party, Facebook is entitled to an award of its attorneys' fees under Section 502(e) of the CCDAF.  *See, e.g., Solarbridge Techs., Inc. v. Ozkaynak*, 2012 WL 2150308, at *9 (N.D. Cal. June 12, 2012) (awarding attorneys' fees under CCDAF against defaulting defendant); *Craigslist, Inc. v. Doe 1*, 2011 WL 1897423, at *7 (N.D. Cal. Apr. 25, 2011) (same); *Zynga Game Network, Inc. v. Goh*, 2011 WL 13376996, at *20 (N.D. Cal. Feb. 14, 2011) (same).

Accordingly, the Court should award Facebook its reasonable attorneys' fees and costs in this matter, the amounts of which should be determined following the grant of this motion, at which point Facebook will submit an affidavit in support of the same.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

MOTION FOR DEFAULT JUDGMENT
CASE NO. 3:19-CV-01277-JSC

1  **V.    <u>CONCLUSION</u>**

2         For these reasons, the Court can and should enter the proposed default judgment and permanent

3  injunction concurrently filed with this motion.

4

5  DATED: July 9, 2020                              Tucker Ellis LLP

6

7

8                                       By:  /s/David J. Steele
                                             David J. Steele
9                                            david.steele@tuckerellis.com
                                             Attorneys for Plaintiff,
10                                           FACEBOOK, INC.

**CERTIFICATE OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

      I declare that I am a citizen of the United States and a resident of Los Angeles, California or employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Tucker Ellis LLP, 515 South Flower Street, Forty-Second Floor, Los Angeles, California 90071-2223.

      On **July 9, 2020,** I served the following:  **NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT** on the interested parties in this action as follows:

| | |
|---|---|
| ANDREY GORBACHOV | |
| Web Sun Group | GLEB SLUCHEVSKIY |
| Sportivnaya ploshad 1, | c/o Eugene Rome |
| Kyiv, Ukraine | Rome & Associates |
| Email: espaldota1@gmail.com | 2029 Century Park East, Suite 450 |
| espaldotagalaxy@gmail.com | Los Angeles, CA 90067 |
| mr.andrey.g.f@gmail.com | erome@romeandassociates.com |
| gorbachovandrii@gmail.com | |
| espaldota@mail.ru | |

**DEFENDANTS**

(X)  **BY EMAIL:**  the above-entitled document to be served electronically by email.

(  )  **BY MAIL:**  By placing a true copy thereof enclosed in a sealed envelope(s) addressed as above, and placing each for collection and mailing on the below indicated day following the ordinary business practices at Tucker Ellis LLP.  I certify I am familiar with the ordinary business practices of my place of employment with regard to collection for mailing with the United States Postal Service.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit or mailing affidavit.

(X)  **FEDERAL:**  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **July 9, 2020**, at West Hollywood, California.

*/s/Steven E. Lauridsen*
Steven E. Lauridsen

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis